UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JENNIFER DOMBROWSKI,
o.b.o. MD, a Minor,

        Plaintiff,                                  Hon. Janet T. Neff

v.                                               Case No. 1:10 CV 879

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/


## REPORT AND RECOMMENDATION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of Social Security that Plaintiff is not entitled to Supplemental Security Income under Title XVI of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.  The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.  Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making his decision, and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). The

2

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was born on June 12, 2001. (Tr. 86). On June 21, 2007, Plaintiff submitted an application for disability benefits, asserting that he has been disabled since April 1, 2007, due to ADHA, manic depression, anxiety, and oppositional defiance disorder. (Tr. 86-88, 90). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 55-85). On June 17, 2009, Plaintiff appeared before ALJ Timothy Terrill, with testimony being offered by Plaintiff and his mother. (Tr. 33-54). In a written decision dated September 1, 2009, the ALJ determined that Plaintiff was not disabled as defined by the Act. (Tr. 16-29). The Appeals Council declined to review this determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g).

## RELEVANT MEDICAL EVIDENCE

On May 9, 2007, M.D. was examined by Dr. Vincente Pacheco. (Tr. 138-40). Dr. Pacheco noted that M.D. was a five-year-old kindergarten student "who was referred for psychiatric evaluation because of continuing hyperactivity and anger." (Tr. 138). M.D.'s mother reported that "she has been concerned since a kindergarten teacher mentioned that [M.D.] had difficulties sitting still and staying on task." (Tr. 138). M.D.'s mother also reported that M.D. "gets along with his

3

teacher and peers although he has some problems on the playground." (Tr. 138).  The results of a

mental status examination were as follows:

> He didn't have any separation problems and was alert.  Language and
> speech were adequate and he did not show any tics.  He was
> impulsive, distracted, and active.  His mood was depressed and
> anxious.  He spoke positively of his mother and her boyfriend as well
> as his siblings.  He verbalized missing his father describing that he
> was in jail.  He spoke positively about school but described being sad
> when peers do not include him in their games.  He also worries when
> the mother is not close by.  On cursory academic screening, [M.D.]
> was able to state his age, birth date, able to recite the alphabet and
> recognized letters and was able to print letters of the alphabet as well
> as some numbers.  He also printed his first name.  He was compliant
> and responsive and accepted praise and approval.

(Tr. 139).  The therapist noted that M.D. "has a long history of impulsivity and inattentiveness and

also has grown up in a chaotic home situation with his father being in and out of jail and reportedly

on drugs." (Tr. 139).  M.D. was diagnosed with adjustment disorder with mixed disturbance of

emotions and conduct and ADHD.  (Tr. 139).  His GAF score was rated at 55-60.[1]  (Tr. 139).  The

doctor recommended that M.D. be prescribed appropriate medication and participate in individual

and family therapy.  (Tr. 140).

On June 4, 2007, M.D. was examined by Dr. Pacheco.  (Tr. 135).  M.D. "insisted he

is able to pay attention better in class."  (Tr. 135).  M.D.'s mother reported that M.D. was not

experiencing "any adverse effects from medication."  (Tr. 135).  She further reported that M.D.'s

teacher "had indicated that [M.D.] is able to focus better."  (Tr. 135).  Dr. Pacheco modified M.D.'s

medication regimen.  (Tr. 135).

---

[1]  The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level
of functioning.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994)
(hereinafter DSM-IV).  A GAF score of 55-60 indicates "moderate symptoms or moderate difficulty in social, occupational, or
school functioning."  *Id.* at 34.

On June 11, 2007, M.D. was examined by Dr. Pacheco.  (Tr. 134).  M.D. reported that he "is doing well with the medication."  (Tr. 134).  M.D.'s mother also reported that M.D. "is doing better" on his medication.  (Tr. 134).  The doctor reported that M.D. "was able to sit and focus and was pleasant and responsive."  (Tr. 134).

On July 31, 2007, Ron Marshal, PhD, completed a report regarding M.D.'s functional limitations.  (Tr. 141-46).  Marshal concluded that M.D. suffered from a severe impairment or combination of impairments but that such did not meet, medically equal, or functionally equal any listed impairment.  (Tr. 141).  Dr. Marshal also reported that Plaintiff experienced "no limitation" in the following domains of functioning: (1) acquiring and using information, and (2) moving about and manipulating objects.  (Tr. 143-44).  The doctor also reported that Plaintiff experienced "less than marked" limitations in the following domains: (1) attending and completing tasks, (2) interacting and relating with others, and (3) caring for yourself.  (Tr. 143-44).

On September 7, 2007, M.D. was examined by Linda Johnson, LMSW.  (Tr. 174-79).  M.D.'s mother reported that M.D.'s behavior had worsened after beginning medication.  (Tr. 175).  She later indicated, however, that M.D.'s condition "was worse in the morning" before taking his medication.  (Tr. 175).  Johnson noted that M.D. was "very pleasant" and "respectful."  (Tr. 179).  M.D. "was able to stay seated for the most part during the interview" and "answered most of [Johnson's] questions."  (Tr. 179).  M.D. "was not violent or interrupting."  (Tr. 179).  Plaintiff's mother also reported that M.D. "can be friendly...likes to share...[and] is respectful when respected." (Tr. 178).  Johnson concluded that M.D. is "a young boy who is probably suffering from some mood disorder as well as ADHD."  (Tr. 179).  Johnson also noted that "there is also some defiance that

5

comes in along with it." (Tr. 179).  Johnson recommended that M.D. participate in therapy and take appropriate medication.  (Tr. 179).

On October 15, 2007, Plaintiff participated in a psychiatric evaluation conducted by Dr. Vajendra Desai.  (Tr. 169-72).  The doctor observed that M.D.'s "speech is rather sparse but he answers questions fairly easily" and "takes direction without difficulty."  (Tr. 171).  M.D.'s "cognitive function appear[ed] to be within [normal] limits" and his "thought content is age appropriate."  (Tr. 171).  The doctor also observed no evidence of perceptual disturbance, psychosis, or psychomotor agitation.  (Tr. 171).  Plaintiff was diagnosed with mood disorder and his GAF score was rated as 50.[2]  (Tr. 171).  Dr. Desai modified Plaintiff's medication regimen.  (Tr. 171).

On November 14, 2007, Plaintiff participated in an electroencephalogram examination the results of which were "normal."  (Tr. 216).

On March 4, 2008, Plaintiff was examined by Dr. Desai.  (Tr. 165-66).  The doctor reported that since Plaintiff's medication regimen was modified, M.D. "has been doing very well." (Tr. 165).  The doctor noted that M.D. "is doing better in school" and "is not having difficulties with impulsivity, angry outbursts, or unusual behavior."  (Tr. 165).  Plaintiff was diagnosed with mood disorder and his GAF score was rated as 60.  (Tr. 165).

Treatment notes dated September 24, 2008, reveal that M.D. "is doing pretty well." (Tr. 164).  The therapist noted that M.D. "is doing really well academically," but "is getting bored

---

[2]  A GAF score of 50 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning."  DSM-IV at 34.

6

at school." (Tr. 164).  The therapist further noted that "overall [M.D.] has made big improvements."

(Tr. 164).  Plaintiff's GAF score was rated as 67.[3]  (Tr. 162).

On January 27, 2009, Susan Drust-de Barbaran, FNP, completed a report regarding

M.D.'s "ability to do mental school-related activities."  (Tr. 180-82).  The nurse reported that M.D.

experienced "moderate" limitations in his ability to relate to others and function independently.  (Tr.

180).  She reported that M.D. experienced "marked" limitations with respect to his ability to

maintain personal appearance, behave in an emotionally stable manner, relate predictably in social

situations, follow rules and use judgment.  (Tr. 180-81).  The nurse also reported that M.D.

experienced "extreme" limitations in his ability to deal with stress and maintain attention and

concentration.  (Tr. 180).

At the administrative hearing, M.D. testified that he was not having any problems at

school and that everything was going "okay."  (Tr. 39).  M.D. reported that his medication was

"helping" his behavior and that he was "doing better now."  (Tr. 41).  M.D. reported that he

experiences "trouble sitting still" when "it's like the first day of school and I don't have friends or,

and that makes me nervous."  (Tr. 42).  M.D. further reported, however, that by the end of the school

year he "had lots of friends."  (Tr. 43).  M.D.'s mother testified that M.D. is much improved with

his medication and does not experience any side effects.  (Tr. 47-48).

---

[3]  A GAF score of 67 indicates that the individual is experiencing "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 34.

## ANALYSIS OF THE ALJ'S DECISION

Federal law provides that an "individual under the age of 18" will be considered disabled if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations."  42 U.S.C. § 1382c(a)(3)(C)(i).  To determine whether a child satisfies this standard, the Commissioner must evaluate the claim pursuant to a three-step sequential process.  20 C.F.R. § 416.924.

In the first step, if the ALJ determines that the child is engaged in substantial gainful activity he cannot be found to be disabled.  20 C.F.R. § 416.924(b); *Elam v. Commissioner of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003).  If the child is not engaged in substantial gainful activity the analysis proceeds to step two, at which point the ALJ must determine whether the child has a severe impairment or combination of impairments.  20 C.F.R. § 416.924(c); *Elam*, 348 F.3d at 125. If the ALJ determines that the child suffers from a severe impairment, or combination of impairments, the analysis proceeds to step three, at which point the ALJ must determine whether the impairment(s) "meet, medically equal, or functionally equal" one of the impairments identified in the Listing of Impairments.  20 C.F.R. § 416.924(d); *Elam*, 348 F.3d at 125.

After noting that Plaintiff was not engaged in substantial gainful activity, the ALJ proceeded to the second step of the analysis, finding that Plaintiff suffered from: (1) attention deficit hyperactivity disorder (ADHD); (2) depression; (3) anxiety; and (4) oppositional defiance disorder. (Tr. 19).  At the third step of the analysis, the ALJ concluded that Plaintiff's impairments do not meet or medically equal any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (Tr. 19).  The ALJ further determined that Plaintiff's

impairments do not functionally equal in severity any impairment identified in the Listing of Impairments.  (Tr. 19-29).

    To determine whether a child claimant suffers from an impairment which is the functional equivalent of a listed impairment, the ALJ must evaluate how the child functions in each of six domains of functioning described as "broad areas of functioning intended to capture all of what a child can or cannot do."  20 C.F.R. § 416.926a(a)-(b).  To be considered disabled the child's impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(a).  The six domains of functioning are:

   (i)  acquiring and using information,
   (ii)  attending and completing tasks,
   (iii)  interacting and relating with others,
   (iv)  moving about and manipulating objects,
   (v)  caring for yourself, and
   (vi)  health and physical well-being.

20 C.F.R. § 416.926a(b)(1).

    The ALJ found that Plaintiff experienced less than marked limitation in the following domains of functioning: (1) attending and completing tasks; (2) interacting and relating with others; and (3) caring for yourself.  (Tr. 24-28).  With respect to the following domains of functioning, the ALJ concluded that Plaintiff experienced no limitation: (1) acquiring and using information; (2) moving about and manipulating objects; and (3) health and physical well-being.  (Tr. 23-29).  Accordingly, the ALJ determined that Plaintiff did not qualify for benefits.

a.      Plaintiff is not Entitled to a Remand

In support of her request for relief, Plaintiff cites to evidence that was not presented to the ALJ, but was instead first submitted to the Appeals Council. (Tr. 1-5, 217-28). The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination. This Court, however, is precluded from considering such material. In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also*, *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff bears the burden of making these showings. *See Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

The evidence in question consists of the following: (1) a September 15, 2009 letter from Linda Johnson to Plaintiff's counsel; (2) a September 9, 2009 letter from Nathan Smith, the principal of the elementary school that M.D. attends; and (3) an undated letter from M.D.'s "distant

10

cousin." Plaintiff is not entitled to a remand for further consideration of this evidence for at least three reasons.

First, Plaintiff has not requested that the Court remand this matter for consideration of this evidence. Plaintiff has, therefore, waived any such argument. *See, e.g., Porzillo v. Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010) (claimant "waves any arguments that are not developed"); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 537 n.25 (10th Cir. 2000) (arguments "superficially" developed are waived); *Financial Resources Network, Inc. v. Brown & Brown, Inc.*, 2010 WL 4806902 at *30 n.29 (D. Mass., Nov. 18, 2010) (same).

Second, Plaintiff has failed to articulate a rationale to justify her failure to timely submit the evidence in question. None of this evidence concerns matters occurring after the issuance of the ALJ's decision, but instead appear to be nothing more than rebuttal to the ALJ's decision. The Court discerns no reason (and Plaintiff offers none) why Plaintiff could not have secured this evidence long before the ALJ issued his decision. Finally, it is not reasonable to conclude that consideration of this evidence would have resulted in a different outcome. The Court concludes, therefore, that it is precluded from considering this evidence and, moreover, that there exists no basis for remanding this matter for its further consideration.

        b.      Plaintiff has Failed to Properly Develop any Argument in Support of Relief

Plaintiff is represented by counsel in this matter. The argument portion of counsel's brief is less than one page in length and consists almost exclusively of legal conclusions devoid of *any* analysis of the record in this matter or the ALJ's decision.

Specifically, counsel invokes the treating physician doctrine, which requires the ALJ to provide good reasons for giving less than controlling weight to an opinion expressed by a treating physician, but fails to identify any opinion to which the ALJ failed to sufficiently defer. Counsel also asserts that "treating doctors have neither expressed doubts about the Plaintiff's symptoms nor indicated that he is exaggerating." While this *appears* to be an attempt to argue that the ALJ failed to accord sufficient weight to Plaintiff's testimony or subjective allegations, counsel fails to identify any specific deficiency in the ALJ's decision or any testimony or allegation by Plaintiff that the ALJ failed to properly consider. Finally, counsel asserts that "the Administrative Law Judge many (sic) not substitute his own impression of an individual's impairment for uncontroverted medical opinions," but fails to identify any portion of the ALJ's decision which allegedly violates this rule.

Counsel's failures in this regard forces the Court to divine from the administrative record the basis for his insufficiently developed arguments. As noted above, arguments that are only superficially developed are waived. Accordingly, the Court concludes that Plaintiff has waived any and all objections to the ALJ's decision by counsel's failure to sufficiently articulate or develop any argument in favor of the requested relief.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C).

Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  February 21, 2012

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge